**Carlos MENDIVELSO, Petitioner,**

**v.**

**UNITED STATES of America, Respondent.**

**No. 06 Civ 6929.**

United States District Court, S.D. New York.

Aug. 17, 2007.

Carlos Mendivelso, Loretto, PA, pro se.

Michael J. Garcia, United States Attorney, Southern District of New York, by: Arianna R. Berg, Esq., Assistant United States Attorney, New York, NY, for Respondent.

OPINION

SWEET, District Judge.

Carlos Mendivelso ("Mendivelso" or the "Petitioner") has petitioned to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. His petition is opposed by the Government. For the reasons set forth below, the petition is denied.

***Prior Proceedings***

The Indictment (03 Cr. 156(RWS)), filed on February 4, 2003, contained two counts. Count One charged Mendivelso with conspiring to distribute and possess with intent to distribute one kilogram and more of heroin in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(A), under 21 U.S.C. § 846. Count Two charged Mendivelso with the distribution and possession with intent to distribute approximately two kilograms of mixtures and substances containing a detectable amount of heroin, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(A).

On May 12, 2003, Mendivelso pleaded guilty to Counts One and Two of the Indictment, pursuant to a written plea agreement ("Plea Agreement" or "Agreement"). The Agreement was executed that same day by Mendivelso, his counsel, and the Government, although the Agreement itself was dated April 22, 2003. (Agreement 1, 6.) In the Agreement, Mendivelso and the Government stipulated that Mendivelso was subject to a 120-month mandatory minimum sentence, and that Mendivelso therefore had a Stipulated Sentencing Guidelines Range of 120 months' imprisonment. (*Id.*)

In the Plea Agreement, Mendivelso and the Government agreed that neither party would seek a downward or upward departure from the stipulated Guidelines range of 120 months' imprisonment. (*Id.* at 3). Mendivelso also stipulated that "he is not eligible for 'safety valve' relief, pursuant to Title 18, United States Code, Section 3553(f) and/or for a reduction in sentence pursuant to U.S.S.G. Sections 2D1.1(b)(6) and 5C1.2 because he has not 'truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan.'" (*Id.* at 2-3). Finally, Mendivelso agreed he would "not file a direct appeal, nor litigate under Title 28, United States Code, Section 2255 and/or Section 2241, any sentence within or below the Stipulated Sentencing Guide-

lines Range of 120 months' imprisonment...." (*Id.* at 4.)

On May 12, 2003, Mendivelso appeared before Magistrate Judge Henry B. Pitman and entered a guilty plea to Counts One and Two of the Indictment. Before recommending the acceptance of Mendivelso's guilty plea, Magistrate Judge Pitman conducted a careful and thorough hearing which complied in all respects with Rule 11 of the Federal Rules of Criminal Procedure.

At the outset of the proceeding, Magistrate Judge Pitman determined that Mendivelso was competent to plead guilty and had the opportunity to review all aspects of his case with his attorney whose representation he found satisfactory. (Hearing Transcript, May 13, 2003 ("Plea Tr."), 3–7, 20.) Magistrate Judge Pitman also described to Mendivelso the nature of the charges contained in Counts One and Two of the Indictment and ensured that Mendivelso understood the elements of the offenses and the maximum penalties applicable to the offense, including the mandatory minimum ten-year term of imprisonment and the effect of the supervised release term. (*Id.* at 9–11.) Magistrate Judge Pitman also ensured that Mendivelso understood that his sentence would be governed by the Sentencing Guidelines, and that he had discussed the application of the Guidelines with his attorney. (*Id.* at 11–12.)

Magistrate Judge Pitman then directed Mendivelso's attention to his plea agreement with the Government and specifically described to Mendivelso certain provisions in the Agreement. Specifically, Magistrate Judge Pitman addressed the waiver-of-appeal provision in the Agreement, confirming that Mendivelso was agreeing not to appeal or otherwise litigate any term of imprisonment equal to or below 120 months' imprisonment. (*Id.* at 14.)

Next, Magistrate Judge Pitman determined that Mendivelso understood the rights that he was waiving by pleading guilty, including his right: (a) to plead not guilty and proceed to trial; (b) to the assistance of appointed counsel at every stage of the proceedings; (c) to confront and cross-examine witnesses; (d) to compulsory process; and (e) against compelled self-incrimination. (*Id.* at 15–16.) Magistrate Judge Pitman also instructed Mendivelso on the presumption of innocence, the burden of proof, and standard of proof beyond a reasonable doubt. (*Id.* at 16.) Mendivelso stated that he understood these rights and was willing to waive them by pleading guilty. (*Id.* at 15–17.) Magistrate Judge Pitman also confirmed with Mendivelso that no promises or threats had been made to induce him to plead guilty. (*Id.* at 17.)

Next, Magistrate Judge Pitman inquired as to the factual basis for Mendivelso's plea. (*Id.* at 17–18.) In response, Mendivelso stated that on November 25, 2002, in Manhattan, he and others agreed to distribute one kilogram of heroin. (*Id.*)

Following the allocution, Magistrate Judge Pitman stated that he was satisfied that Mendivelso understood the nature of the charges against him and the consequences of his guilty plea, that Menivelso was pleading voluntarily, and that Mendivelso's plea was supported by an independent basis in fact. (*Id.* at 20.) Magistrate Judge Pitman recommended that Mendivelso's guilty plea be accepted, (*id.*), and on May 22, 2003, the recommendation was adopted and Mendivelso's guilty plea accepted.

Before Mendivelso's sentencing, the Probation Office issued a Presentence Investigation Report ("PSR"). The Sentencing Guidelines calculations in the PSR accorded with Mendivelso's plea agreement.

The PSR concluded that Mendivelso's Sentencing Guidelines range was 87 to 108 months, but also stated that Mendivelso faced a statutory mandatory minimum sentence of 120 months' imprisonment. (PSR ¶ 80.)

On April 7, 2004, Mendivelso appeared for sentencing. A sentencing hearing was conducted in accordance with Rule 32 of the Federal Rules of Criminal Procedure. Mendivelso's attorney confirmed that he and Mendivelso had received and reviewed the PSR and that there were no objections to the factual recitation or Sentencing Guidelines calculations contained therein. (Hearing Transcript, Apr. 7, 2004 ("Sent. Tr."), 2.) Mendivelso was sentenced to a term of 120 months' imprisonment and a five-year term of supervised release, and a mandatory $200 special assessment was imposed. (*Id.* at 3.) Mendivelso was advised that he had a right to appeal his sentence. (*Id.*)

On October 18, 2004, six months after his conviction became final, Mendivelso filed a notice of appeal with the Second Circuit. On January 7, 2005, his counsel Guy Oksenhendler ("Oksenhendler"), filed a motion to be dismissed as counsel pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). On January 29, 2005, the Government moved to dismiss the appeal because: (1) the notice was untimely; (2) there was an appellate waiver in the plea agreement; and (3) there were no non-frivolous issues for appeal. On March 23, 2006, the Second Circuit granted the motion to dismiss the appeal and granted Oksenhendler's motion to be dismissed as counsel.

Mendivelso filed the instant petition for relief under 28 U.S.C. § 2255 on September 11, 2006. It was marked fully submitted on December 1, 2006. Mendivelso filed a supplemental submission on March 3, 2007.

***The Petition***

Mendivelso has challenged his conviction and sentence, arguing that but for the ineffectiveness rendered by his counsel, he would have received a lower sentence. Specifically, Mendivelso has contended that his attorney failed to request a two-level reduction in Mendivelso's Sentencing Guidelines range, pursuant to the "safety valve" provisions contained in 18 U.S.C. § 3553(f) and U.S.S.G. § 2D1.1(b)(6). In addition, Mendivelso has claimed that it was tantamount to "prosecutorial misconduct" for the Government to include in the Plea Agreement a waiver of safety valve treatment. Moreover, Mendivelso has contended that the Government improperly used an "implied threat" in the plea agreement by informing the defendant that if he sought safety valve treatment, the Government would be able to use the information against him. (Pet'r's Mem. in Supp. 4.)

In his March 3, 2007 supplemental submission, Mendivelso requested that his petition be held in abeyance pending the United States Supreme Court's decision in *Rita v. United States,* — U.S. —, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007). He also argued that the Court did not sufficiently consider the factors listed in 18 U.S.C. § 3553 and 28 U.S.C. § 994(d).

***Discussion***

**1. The Petition Is Not Timely**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a defendant has one year from the date the conviction becomes final to file their petition. *See* 28 U.S.C. § 2255. The conviction is deemed final when the time for filing a notice of appeal expires. *Moshier v. United States,* 402 F.3d 116, 118 (2d Cir.2005) ("[F]or purposes of § 2255 motions, an unappealed federal criminal judgment becomes final when the time for

filing a direct appeal expires.") Here, Mendivelso was sentenced on April 7, 2004. His conviction thus became final on April 22, 2004, one day after his time to appeal expired. Fed.R.Crim.P. 45(a)(2); Fed. R.App. P. 4(b), 26. Having failed to file a notice of appeal by April 22, 2004,[1] Mendivelso thus had one year to file his habeas petition, or until April 22, 2005.[2] Mendivelso did not file his habeas petition until September 11, 2006. Thus, his petition is time-barred.

**2. The Petition Is Barred By the Plea Agreement**

■ Even if, *arguendo*, Mendivelso's petition were not time barred, it would be barred by the waiver of appeal contained in his plea agreement.

As noted above, Mendivelso's plea agreement with the Government specified that "the defendant will not file a direct appeal, nor litigate under Title 28, United States Code, Section 2255 and/or Section 2241, any sentence within or below the Stipulated Sentencing Guidelines Range of 120 months' imprisonment set forth above." (Agreement 4.) Because Mendivelso knowingly waived his right to challenge the 120-month sentence that the Court ultimately imposed, his waiver retains its full force, and his habeas petition is denied.

The Second Circuit has held: "In general, a defendant's knowing and voluntary waiver of his right to appeal a sentence within an agreed guideline range is enforceable." *United States v. Rosa*, 123 F.3d 94, 97 (2d Cir.1997); *see also United States v. Ready*, 82 F.3d 551, 555 (2d Cir. 1996); *United States v. Yemitan*, 70 F.3d 746, 748 (2d Cir.1995). Specifically, the particular type of waiver contained in Mendivelso's plea agreement has been found to be valid and enforceable. *See Rosa*, 123 F.3d at 98–99 (limiting acceptable plea agreements to those that waive a defendant's right to appeal a sentence "falling within a range explicitly stipulated within the agreement itself"). In addition, the Second Circuit has enforced a waiver in a plea agreement of a defendant's right to challenge a sentence under § 2255. *See, e.g., Garcia–Santos v. United States*, 273 F.3d 506, 508–09 (2d Cir.2001) (enforcing defendant's waiver of collateral attack under § 2255 where defendant knowingly and voluntarily waived right in plea agreement).

■ Therefore, in general, where the defendant has knowingly and voluntarily waived his right to appeal or challenge a sentence within a stipulated Guidelines range, he may not subsequently appeal or challenge a sentence imposed within that range. *See, e.g., United States v. Maher*, 108 F.3d 1513, 1531 (2d Cir.1997); *United States v. Salcido–Contreras*, 990 F.2d 51, 53 (2d Cir.1993). However, the Second Circuit "ha[s] not held criminal defendants to their waivers of this right in every circumstance." *Rosa*, 123 F.3d at 98. Instead, several exceptions have been identified, including when a waiver is not made knowingly and voluntarily and when the defendant claims ineffective assistance of

1. Mendivelso filed his notice of appeal on October 18, 2004, more than six months after he was sentenced. The appeal was dismissed on April 21, 2006, "based on untimely filing of notice of appeal or the terms of plea agreement, or, in the alternative" summarily affirmed "because there are no non-frivolous issues on appeal." (Case No. 03 Cr. 156, Docket No. 106.)

2. Here, the facts supporting Mendivelso's habeas petition were available at the time of his sentence. There is therefore no argument to be made that the date for filing is extended due to the discovery of any such facts. *See* 28 U.S.C. § 2255(4).

counsel. *Id.* (internal citations omitted); *see also United States v. Djelevic,* 161 F.3d 104, 107 (2d Cir.1998).

Mendivelso has asserted that his appeal waiver is unenforceable both because it was not knowing and voluntary and due to ineffective assistance of counsel. He has not succeeded, however, in proving that his appeal waiver is not enforceable based on either circumstance.

First, Mendivelso has not contended that his waiver of his right to appeal was not knowing and voluntary. As noted above, Mendivelso expressly acknowledged at his Rule 11 hearing that he had had a full opportunity to discuss his case and the consequences of his plea with his counsel before entering his plea. Mendivelso also affirmed at the Rule 11 hearing his understanding that he would not have a right to appeal if the Court sentenced him within the stipulated Guidelines range. Finally, Mendivelso has acknowledged in his Memorandum of Law that "a waiver of appellate rights was agreed upon as long as the court did not exceed the 120 month range." (Pet'r's Mem. in Supp. 3.) This Court may rely on Mendivelso's statements, as well as the agreement itself, in concluding that Mendivelso has knowingly and voluntarily waived his right to file this petition. *See United States v. Hernandez,* 242 F.3d 110, 112–13 (2d Cir.2001); *United States v. DeJesus,* 219 F.3d 117, 121 (2d Cir.2000) (*per curiam* ).

Mendivelso has asserted that "the appellate waiver is not enforceable and void since the plea contained false information, fraud and/or misleading information to the extent or in regards to possible departures he was entitled to." (Pet'r's Mem. in Supp. 4.) Mendivelso has asserted further that "[i]t was not explained to the Petitioner during plea negotiations the specifics of the safety valve or the plea language," thereby belying that the proceedings were "knowing and intelligent." (*Id.*) The safety valve issue is separate from Mendivelso's knowing and voluntary waiver of his right to appeal, and therefore will be addressed separately, *see infra,* but does not bear on the enforceability of the appeal waiver contained in the Plea Agreement.

Second, mere allegations of ineffective assistance are not enough to undermine the waiver-of-appeal provision in a plea agreement. *See United States v. Monzon,* 359 F.3d 110, 118–19 (2d Cir. 2004). The Second Circuit has stated:

> If the rule were otherwise, a defendant who secured the benefits of a plea agreement by, *inter alia,* knowingly and voluntarily waiving the right to appeal could escape the fairly bargained-for appeal waiver by the simple expedient of asserting an ineffective-assistance-of-counsel claim that had no merit. To find an appeal waiver unenforceable simply because the defendant makes the claim, where the record (a) indicates that the appeal waiver was knowing and voluntary and (b) does not show merit in the ineffective-assistance-of-counsel claim, would "render the plea bargaining process and the resulting agreement meaningless," *United States v. Salcido–Contreras,* 990 F.2d at 53.

*Id.* at 119. Mendivelso has not satisfied his burden to prove ineffective assistance of counsel. *See infra.*

Accordingly, based on the foregoing analysis and authorities cited, Mendivelso's petition is barred because he received the sentence for which he bargained, his right to challenge the sentence has been waived, and he has not successfully shown any circumstance that would overcome the enforceability of his appeal waiver.

### 3. Counsel's Representation Was Not Ineffective

Although Mendivelso's petition is barred by the terms of the plea agree-

ment, alternatively, the record demonstrates that assistance of counsel was not ineffective.

To prove ineffective assistance of counsel, Mendivelso must show that: (1) his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) he was prejudiced by his counsel's deficient performance. *Strickland v. Washington,* 466 U.S. 668, 687–96, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994). When applying the *Strickland* analysis, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689, 104 S.Ct. 2052. "The court's central concern is not with 'grad[ing] counsel's performance,' but with discerning 'whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.'" *United States v. Aguirre,* 912 F.2d 555, 561 (2d Cir.1990) (quoting *Strickland,* 466 U.S. at 696, 104 S.Ct. 2052) (internal citations omitted).

In analyzing a claim that counsel's performance fell short of constitutional standards, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. Under *Strickland*:

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.

*Strickland,* 466 U.S. at 690–91, 104 S.Ct. 2052. Moreover, "[i]n assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices." *Mayo,* 13 F.3d at 533 (quoting *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052; citing *Lockhart v. Fretwell,* 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)).

Even if an attorney's performance was objectively unreasonable and unprofessional, a defendant must also prove prejudice. The defendant "must show 'that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Lockhart,* 506 U.S. at 369, 113 S.Ct. 838 (quoting *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052). The reviewing court must assess "whether, absent counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different." *Mayo,* 13 F.3d at 534. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052). Moreover, "an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." *Lockhart,* 506 U.S. at 369, 113 S.Ct. 838. The "'prejudice' component of the *Strickland* test ... focuses on the question whether counsel's deficient performance renders the result ... unreliable or the proceeding fundamentally unfair." *Id.* at 372, 113 S.Ct. 838.

Mendivelso's principal contention involves eligibility for safety valve treatment. In order to be eligible for safety valve treatment, a defendant must satisfy the following five conditions:

> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines ...; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan....

18 U.S.C. § 3553(f). With respect to the fifth requirement set forth in § 3553(f), the defendant must provide "truthful information regarding the offense of conviction and all relevant conduct." *United States v. Cruz,* 156 F.3d 366, 371 (2d Cir.1998) (internal quotation marks omitted). The defendant bears the burden of proving that he is eligible for the safety valve. *See United States v. Gambino,* 106 F.3d 1105, 1110 (2d Cir.1997) ("The plain language of the 'safety valve' places the burden on the defendant to provide truthful information to the government. It follows that the burden should fall on the defendant to *prove* to the court that he has provided the requisite information if he is to receive the benefit of the statute." (emphasis in original) (citations omitted)).

In his petition, Mendivelso claims that counsel was ineffective because Mendivelso was not "properly advised of the safety valve criteria" and therefore "denied ... a fair opportunity to come clean and reap said benefits." (Pet'r's Mem. in Supp. 10.) Moreover, Mendivelso claims that "counsel in the instant case was ineffective for allowing the incorrect language in the plea agreement to proceed without objection. No objection appears in the record or the request for a safety valve hearing, or for that matter to have the court state on the record why, 'with interpreter' the safety valve was not being sought." (*Id.* at 9.)

According to Mendivelso's counsel, Guy Oksenhendler ("Oksenhendler"), Mendivelso was advised numerous times regarding the safety valve.[3] Oksenhendler has asserted that he advised Mendivelso as to the safety valve proffer procedure and its effects on sentencing on several occasions, often memorializing his meetings with Mendivelso in contemporaneous notes. (Affidavit of Oksenhendler, Nov. 30, 2006 ("Oksenhendler Aff."), ¶¶ 12–13, 16.) Oksenhendler has contended that in a meeting on March 13, 2003, Mendivelso admitted "information which made clear to counsel the Petitioner would have difficulty at a proffer session to determine his eligibility for the Safety Valve, and would have specifically raised his base offense level for narcotics pre-Booker." (*Id.* ¶ 14.) Oksenhendler has stated that his written notes from the date of Mendivelso's guilty plea reflect that he reviewed the plea agreement with Mendivelso and specifically told Mendivelso that they could still arrange for a safety valve meeting with the prosecutor. (*Id.* ¶ 16.) Oksenhendler has claimed that "[a]t no time did the Petitioner once ask counsel to schedule a Safety Valve meeting despite counsel informing Petitioner that counsel could schedule and [sic] appointment with the AUSA up and until his sentencing." (*Id.* ¶ 17.)

3. The attorney-client privilege is implicitly waived when the defendant asserts a claim of ineffective assistance of counsel. *See Graziose v. United States,* No. 03 Civ. 8109(RWS), 2004 WL 102699, at *1 (S.D.N.Y. Jan.21, 2004).

Mendivelso never met with the Government in a safety valve proffer, which means that his attorney's request for safety valve treatment, had it been made, would have been meritless and swiftly denied. *See* 18 U.S.C. § 3553(f)(5). Moreover, given the circumstances "after thorough investigation of law and facts relevant to plausible options," *Strickland,* 466 U.S. at 690–91, 104 S.Ct. 2052, there appears to be a reason why Mendivelso would have rationally chosen, in consultation with his attorney, not to pursue the benefit of the safety valve; namely, that the risks could have been outweighed by the benefits. In addition to exposing Mendivelso to additional jail time, any admissions as to uncharged conduct could have rendered him ineligible for the safety valve. *See, e.g.,* U.S.S.G. § 5C1.2(a)(2) (defendant may not qualify for the safety valve if he used "violence or credible threats of violence or possess[ed] a firearm or other dangerous weapon" in connection with the offense). As his attorney outlined, "any benefit the petitioner received from getting the safety value, would be negated by the increase in offense level, and quite likely would have raised his guidelines higher than the ten year sentence he ultimately received." (Oksenhendler Aff. ¶ 14.) Finally, the language contained in the Plea Agreement regarding Mendivelso's eligibility for the safety valve and the possible impacts on his sentence of a future proffer was not incorrect. *See discussion infra.*

Even if, *arguendo,* counsel's performance fell below reasonable standards in the profession, Mendivelso can make no argument that he was prejudiced at sentencing. *See Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. Contrary to the his assertions, Mendivelso did not waive his ability to seek safety valve relief when he signed the Plea Agreement. The language of the Plea Agreement clearly contemplates that Mendivelso may seek safety valve relief up to the time of his sentencing. (Agreement 3.) It is apparent, however, that although Petitioner claims that the "probability clearly exists [that] had Petitioner been properly advised, he would have sought applicability of the safety valve, cooperated to the extent necessary and received a two level reduction," (Pet'r's Mem. in Supp. 4), he did not intend to meet the standard of a safety valve proffer since he also indicated that "[i]t is not a requirement of the safety valve to inform on others." (*Id.*)

Accordingly, Mendivelso has not shown that his counsel's performance fell below the reasonable standards in the profession or that there is a reasonable probability that the outcome of the proceeding would have been different.

### 4. The Safety Valve Provision Was Proper

Mendivelso has contended that it was an "implied threat" and thus "prosecutorial misconduct" for the Government to include in the Plea Agreement a provision in which it advised him that, should he seek safety valve relief, the information provided by him might be used to enhance his sentence. (Pet'r's Mem. in Supp. 4.)

As a preliminary matter, Mendivelso is procedurally barred from raising his claim of "prosecutorial misconduct" because he failed to do so on direct appeal. It is well-established that "if a petitioner fails to assert a claim on direct review, he is barred from raising the claim in a subsequent § 2255 proceeding unless he can establish both cause for the procedural default and actual prejudice resulting therefrom or that he is 'actually innocent' of the crime of which he was convicted." *DeJesus v. United States,* 161 F.3d 99, 102 (2d Cir.1998) (citations omitted); *see also Steele v. United States,* No. 04 Civ.

6918(AJP), 02 Cr. 629(JSR), 2005 WL 704868, at *14 (S.D.N.Y. Mar. 29, 2005). In this case, it does not appear that Mendivelso raised any claim of prosecutorial misconduct or threat in his appeal of his sentence.

In order to overcome the procedural bar, Mendivelso must demonstrate both cause for failure to raise his claims on direct appeal and prejudice resulting from such failure. Mendivelso has not shown cause for his failure to raise his claims on direct appeal, and he has not provided a valid reason why his claims could not have been made earlier. *See United States v. Smith,* 241 F.3d 546, 548 (7th Cir.2001) ("'Cause' means some impediment," and the petitioner failed to allege "that any outside force impeded his legal defense."). Mendivelso's petition is therefore procedurally barred with respect to his claim of prosecutorial misconduct.

Nevertheless, even assuming Mendivelso's petition was not procedurally defective, his petition fails on the merits. The plea agreement states, in relevant part:

> The defendant agrees that he is not eligible for 'safety valve' relief, pursuant to Title 18, United States Code, Section 3553(f) and/or for a reduction in sentence pursuant to U.S.S.G. Sections 2D1.1(b)(6) and 5C1.2 because he has not 'truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan.' Notwithstanding any of the foregoing, the parties agree that, in the event the defendant seeks to qualify for relief from the mandatory sentencing provisions of Title 21 pursuant to Title 18, United States Code, Section 3553(f), and/or for a reduction in sentence pursuant to U.S.S.G. §§ 2D1.1(b)(6) and 5C1.2, and information furnished by the defendant at meetings with the Government and/or evidence obtained directly or indirectly therefrom supports a higher Guidelines range than that to which the parties have stipulated above, the Government: (i) will not be bound by the above-referenced stipulations regarding the appropriate sentencing range; and (ii) may offer into evidence, in connection with sentencing and for purposes of calculating the appropriate Sentencing Guidelines range, statements made by the defendant at meetings with the Government.

(Agreement 2–3.)

Pursuant to the safety valve statutory provision, "not later than the time of the sentencing hearing, the defendant [must have] truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f)(5). Contrary to his assertions, Mendivelso did not waive his ability to seek safety valve relief when he signed the Plea Agreement. Rather, the Plea Agreement indicates that Mendivelso agreed at the time of his signing of the plea agreement that he was not eligible for the safety valve. However, the Plea Agreement plainly contemplates that Mendivelso might nevertheless seek safety valve relief up to or at the time of his sentencing. If Mendivelso were to do so, however, the Plea Agreement advised him that the information he provided to the Government in connection with the safety valve procedure could be used as relevant conduct at sentencing and thus might increase his sentence exposure.

Mendivelso has argued that pursuant to U.S.S.G. § 5C1.2 application note 7, information gleaned during safety valve proceedings cannot be used against a petition-

er pursuant to U.S.S.G. § 1B1.8. (Pet'r's Mem. in Supp. 4.) Application note 7 states that "[i]nformation disclosed by the defendant with respect to subsection (a)(5) may be considered in determining the applicable guideline range, except where the use of such information is restricted under the provisions of § 1B1.8." However, U.S.S.G. § 1B1.8 prohibits the use of certain information where the defendant is cooperating with the Government pursuant to a cooperation agreement, under which the Government has agreed that "self-incriminating information provided pursuant to the agreement will not be used against the defendant." Therefore, U.S.S.G. § 1B1.8 would not have applied even if Mendivelso had participated in a safety valve proffer with the Government.

Therefore, the safety valve provision in the Plea Agreement is not an implied threat, but simply an advisement of the safety valve procedures and consequences. Accordingly, for the foregoing reasons, it is appropriate to deny Mendivelso's petition in this regard.

**5. *Rita v. United States* and Consideration of the Section 3553(a) and 994(d) Factors Would Have No Impact on the Petition**

Finally, in his supplemental submission, Petitioner requested that his petition be held in abeyance pending the United States Supreme Court's decision in *Rita v. United States,* — U.S. —, 127 S.Ct. 2456, 168 L.Ed.2d 203. He also argued that the Court did not sufficiently consider the factors listed in 18 U.S.C. § 3553 and 28 U.S.C. § 994(d).

The Supreme Court rendered its opinion in *Rita* on June 21, 2007, holding, *inter alia,* that "a court of appeals may apply a presumption of reasonableness to a district court sentence that reflects a proper application of the Sentencing Guidelines." 127 S.Ct. at 2462. Therefore, the Supreme Court's decision in *Rita* has no impact with respect to the instant petition.

Similarly, consideration of the factors outlined in 18 U.S.C. § 3553 and 28 U.S.C. § 994(d) would not have had an impact on the sentence imposed since Petitioner was sentenced to a statutorily-set mandatory minimum term of imprisonment and was not eligible for safety valve relief due to his failure to proffer with the Government in compliance with 18 U.S.C. § 3553(f)(5). Petitioner therefore received the lowest possible sentence under the statute.

***Conclusion***

For the foregoing reasons, Mendivelso's petition is denied. As Petitioner has not made a substantial showing of the denial of a Constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253; *see also United States v. Perez,* 129 F.3d 255 (2d Cir.1997); *Lozada v. United States,* 107 F.3d 1011 (2d Cir.1997). Pursuant to 28 U.S.C. § 1915(a)(3), it is hereby certified that any appeal from this order would not be taken in good faith. *Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

It is so ordered.